**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PROTECT THE PUBLIC'S TRUST<br>712 H Street, N.E.<br>Suite 1682<br>Washington, D.C. 20002,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL SCIENCE FOUNDATION<br>2415 Eisenhower Avenue<br>Alexandria, Virginia 22314,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 1:26-cv-2754 |

## COMPLAINT

1. Plaintiff Protect the Public's Trust ("PPT") brings this action against the National Science Foundation ("NSF") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking declaratory and injunctive relief to compel NSF's compliance with FOIA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

4. Plaintiff PPT is a nonprofit corporation dedicated to restoring public trust in government by promoting the fair and equal application of the rules and standards of ethical conduct to all public servants. PPT seeks to promote transparency and broadly disseminate

information so that the American people can evaluate the integrity and ethical conduct of those who act in their name.

5. Defendant NSF is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1). NSF has possession, custody, and control of records responsive to Plaintiff's FOIA request.

**STATEMENT OF FACTS**

6. On April 15, 2026, PPT submitted a FOIA request to the NSF's FOIA Office requesting the "complete human-readable source code used by or for NSF in connection with the WIFIRE wildfire spread prediction system, including any systems, algorithms, wildfire spread models, analytical modules, computational pipelines, or workflows used to ingest data, simulate fire behavior, or generate wildfire spread predictions." (hereinafter referred to as the Request and attached as Exhibit A)

7. The WIFIRE wildfire spread prediction system is a computational modeling platform that integrates environmental data sources—including camera feeds, weather observations, and geographic data—to model and forecast wildfire spread. NSF has publicly promoted WIFIRE on its own website, describing the system as an NSF-funded cyberinfrastructure that performs these functions, and has highlighted its own role in the project's development.

8. The Request states that it "is a request under [FOIA] from Protect the Public's Trust," and includes the signature block of Michael Chamberlain in his capacity as PPT Director.

9. On May 1, 2026, NSF assigned the request case number 2026-FOI-00229 (Exhibit B).

10. On May 20, 2026, NSF emailed PPT a final response stating that NSF "conducted a thorough search and located no records responsive to [PPT's] request" (Exhibit C). NSF's

response provided no information regarding the offices or databases searched, the search terms employed, or the basis for concluding that no responsive records exist.

11. On June 29, 2026, PPT emailed its administrative appeal to NSF (Exhibit D).

12. PPT's appeal challenged NSF's no-records determination as inconsistent with the agency's own public descriptions of WIFIRE on its website, which describe the system as an NSF-funded computational modeling platform—a description that necessarily implies the existence of computer code to process data. The appeal also noted that NSF's response provided no information regarding the offices searched or the basis for concluding that no responsive records exist, and requested that NSF conduct an additional search reasonably calculated to locate all responsive records.

13. PPT's appeal states that "Protect the Public's Trust (PPT) appeals the National Science Foundation's (NSF) determination," and includes the signature block of Madison Yardis in her capacity as a research associate for PPT.

14. On June 30, 2026, NSF refused to log the appeal, stating: "Unfortunately, this letter was not signed by the original request [sic] whom appeal rights were granted therefore we cannot log this appeal." NSF indicated that the inclusion of Yardis's signature block instead of Chamberlain's rendered the administrative appeal invalid (Exhibit E).

15. On July 6, 2026, PPT responded to NSF's refusal, explaining in detail that the request was "submitted on behalf of [PPT]"—not Chamberlain individually—and that the original request consistently identified PPT as the requester. PPT noted that the opening sentence of the request stated it was "from Protect the Public's Trust (PPT)," and that the "Records Requested" and "Fee Waiver" sections likewise consistently identified PPT as the requester. PPT further

explained that "[p]ersonnel changes within organizations are not uncommon and do not mean that an organization loses the ability to pursue FOIA requests submitted on its behalf." (Exhibit F).

16. On July 7, 2026, NSF responded to PPT's clarification by stating: "In FOIA that pertains to the requester category, please have the original requester submit the appeal." NSF continued to treat the individual signer, rather than the organization, as the requester (Exhibit G).

17. That same day, once again, PPT asserted that it was the original requester, not a particular individual, and then asked NSF for further clarification (Exhibit H).

18. NSF responded to PPT with a final directive: "You will have to submit a new request." NSF thus refused to process the appeal, refused to recognize PPT as the original requester, and effectively required the organization to start the FOIA process anew (Exhibit I).

19. When a FOIA request is expressly submitted on behalf of an organization, courts have held that the organization—not the individual who signed the letter—is the requester. The Ninth Circuit has squarely addressed this issue, holding that "common sense must prevail in determining who is a requester under FOIA" and rejecting the formalism that an individual employee's signature determines requester identity. The court explained: "The online form clearly identified [the organization] as the requester—in the 'Organization' field and in its reference to 'our members' . . . . We are left with the firm conclusion that the suit should not have been dismissed for lack of standing." *A Better Way for BPA v. United States Dep't of Energy Bonneville Power Admin.*, 890 F.3d 1183, 1187–88 (9th Cir. 2018).

20. FOIA mandates that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (emphasis added). The term "person" as used in Acts of

Congress "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. PPT, as a nonprofit corporation, is a "person" entitled to make FOIA requests and pursue administrative appeals in its own name.

21. "[B]ased on [the] broad statutory language [in 5 U.S.C. § 552(a)(3)(A)], courts have held that whoever is named on a FOIA request is generally a requester." *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1104 (9th Cir. 2016). While "a person whose name does not appear on a request for records has not made a formal request for documents within the meaning of the statute," *McDonnell v. United States*, 4 F.3d 1227, 1236–37 (3d Cir. 1993), this principle supports—rather than undermines—PPT's position, because PPT's name appears prominently on the Request as the identified requester.

22. Both the Request and PPT's appeal letter consistently use language positioning PPT as the requester.

23. "A FOIA request [to NSF] need not be in any particular format, but it must . . . include the requester's name and mailing address." 45 C.F.R. § 612.3(b).

24. PPT provided NSF with its name and mailing address in the Request.

25. "Requesters can appeal an agency determination . . . that a requested record does not exist or cannot be located." *Id.* at § 612.6(c)(2).

26. PPT attempted to appeal NSF's determination that its requested records do not exist or cannot be located but was not afforded its right, as the original requester, to do so.

27. The Request seeks documents in the public interest because it will help the public understand the WIFIRE wildfire spread prediction system—a system that NSF has publicly promoted on its own website as an NSF-funded computational platform—and the taxpayer-funded development of that program. NSF's no-records determination is facially implausible given the

agency's own public descriptions of WIFIRE as a functioning computational system that necessarily relies on source code.

28. NSF has not produced responsive documents to PPT and has not allowed PPT to appeal NSF's determination, thereby depriving PPT of information it needs to inform the public about NSF's development and taxpayer funding of the WIFIRE system and directly frustrating PPT's organizational mission of promoting government transparency and accountability. This denial of access to requested records is itself a sufficient injury in fact to support Article III standing. See *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (a person denied access to information subject to disclosure under FOIA suffers a sufficient injury in fact to challenge the denial).

29. NSF has thus violated its FOIA obligations.

30. Because NSF failed to produce responsive documents, wrongfully denied PPT's administrative appeal on improper grounds, and ultimately directed PPT to "submit a new request" rather than process the appeal, PPT has constructively exhausted its administrative remedies and seeks immediate judicial review. Independently, more than twenty working days have elapsed since PPT submitted its administrative appeal on June 29, 2026, without NSF rendering any decision on the merits, which alone establishes constructive exhaustion under 5 U.S.C. § 552(a)(6)(C)(i).

## COUNT I

### Violation of FOIA, 5 U.S.C. § 552

### Wrongful Withholding of Non-Exempt Responsive Records and Inadequate Search

31. PPT repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

32. PPT's NSF request discussed above was a properly submitted request for records within the possession, custody, and control of NSF.

33. NSF is an agency subject to FOIA and, therefore, has an obligation to release any non-exempt records and provide a lawful reason for withholding any materials in response to a proper FOIA request.

34. NSF is wrongfully withholding non-exempt agency records requested by PPT by failing to produce non-exempt records responsive to its request.

35. NSF's determination that no responsive records exist is implausible in light of the agency's own public descriptions of WIFIRE as a functioning computational system that integrates data sources and generates predictions. A computational modeling platform cannot function without source code. An agency's search must be "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To meet this standard, an agency must, at minimum, identify the terms searched and the type of search performed, and aver that all files likely to contain responsive materials were searched. *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). NSF's failure to identify the offices searched, the search terms used, or the databases queried renders its search inadequate as a matter of law.

36. NSF's failure to provide all non-exempt responsive records violates FOIA.

37. Plaintiff PPT is therefore entitled to declaratory and injunctive relief requiring NSF to promptly produce all non-exempt records responsive to its FOIA request and provide an index justifying the withholding of any responsive records withheld under claim of exemption.

## COUNT II

### Violation of FOIA, 5 U.S.C. § 552

### Wrongful Denial of Administrative Appeal

38. PPT repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

39. Under FOIA's implementing regulations, "[r]equesters can appeal an agency determination . . . that a requested record does not exist or cannot be located." 45 C.F.R. § 612.6(c)(2). NSF wrongfully refused to process PPT's timely administrative appeal of its no-records determination.

40. NSF rejected PPT's appeal solely because the appeal letter bore the signature of a different PPT representative than the one who signed the original request. This rationale is contrary to FOIA's text, NSF's own regulations, and controlling case law, all of which recognize that an organization—not an individual employee or representative—is the requester when the request is submitted on the organization's behalf.

41. NSF's refusal to process the appeal effectively denied PPT its statutory right to administrative review and improperly required PPT to "submit a new request," thereby forcing the organization to restart the FOIA process rather than adjudicating the merits of its appeal.

42. NSF's wrongful denial of PPT's administrative appeal constitutes an additional and independent violation of FOIA. Plaintiff PPT is therefore entitled to declaratory and injunctive relief requiring NSF to accept and process PPT's administrative appeal on the merits.

## REQUESTED RELIEF

Plaintiff PPT respectfully requests this Court:

A) Assume jurisdiction in this matter and maintain jurisdiction until NSF complies with the requirements of FOIA and any and all orders of this Court.

B) Order NSF to produce, within ten days of the Court's order, or by other such date as the Court deems appropriate, any and all non-exempt records responsive to PPT's request and an index justifying withholding all or part of any responsive records that are withheld under claim of exemption.

C) Declare that NSF's refusal to process PPT's administrative appeal was unlawful, and order NSF to accept and adjudicate on the merits PPT's timely appeal of NSF's no-records determination.

D) Order NSF to provide a detailed declaration identifying the offices searched, the search terms used, the databases and record systems queried, and the rationale for concluding that no responsive records exist.

E) Award PPT the costs of this proceeding, including reasonable attorney's fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E). Grant PPT other such relief as the Court deems just and proper.

Dated: August 4, 2026

Respectfully submitted,

PROTECT THE PUBLIC'S TRUST

By Counsel:

/s/*James E. Trainor III*
James E. Trainor III
D.C. Bar ID: TX0012
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
(415) 433-1700
JTrainor@dhillonlaw.com

*Counsel for the Plaintiff*